## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHELLE GUNN, MARTINEZ HAYMER, and CARL THOMAS, individually and on behalf of others similarly situated, | Case No. 17-cv-6314 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| STEVENS SECURITY & TRAINING SERVICES, INC. and AL STEVENS, | |
| Defendants. | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

### INTRODUCTION

Plaintiffs have filed this Motion to Compel seeking documents relating to the following Requests for Production of Documents: Request No. 1 - all hours worked of each independent contractor security guard paid by the hour; Request No. 2 - all recorded clock in and clock out times of each independent contractor security guard paid by the hour; Request No. 3 - all amounts paid to each independent contractor security guard paid by the hour; and Request No. 4 – all documents recording the total overtime earnings paid to each independent contractor security guard paid by the hour. (Pls' Exhibit G).[1]  For several reasons, Defendants should not be compelled to produce the requested documentation.

First, as it relates to Request No. 4, Defendants have previously advised Plaintiffs that they are not in possession of any responsive documents, nor are they required to create evidence. Second, and regarding Request Nos. 1-4, all possible present and former security guards who

---

[1] On January 29, 2018, Defendants provided Plaintiffs with responsive documents relating to Requests Nos. 1-3 for Plaintiffs Gunn and Haymer.

will be seeking to recover unpaid overtime have already opted into this lawsuit – and the entire class consists of 2 people. Thus, Defendants should not be compelled to produce the requested information in Request Nos. 1-4 because it is evident that Plaintiffs only seek to circumvent 29 U.S.C. §216(b)'s opt-in process vis-à-vis these Requests and Rule 23's opt-out process in order to create a larger unpaid overtime class since they could not initially achieve this through the opt-in process. Third, and as it relates to Request Nos. 1-3, as a private security company located in Chicago, but solely regulated by the State of Illinois and, thus, exempt from the City of Chicago's Home Rule Regulation per the City of Chicago, Defendants are exempt from the Chicago Minimum Wage Ordinance ("CMWO"). Accordingly, Defendants should not be compelled to produce the documents Plaintiffs are seeking in Request Nos. 1-3 because they have no legal relevance and/or applicability to this matter and/or Count III under the CMWO. Finally, even if the Court were so inclined to compel Defendants to produce the requested documents in Request Nos. 1-3, it should not, as doing so will be unduly burdensome to Defendants and its sole payroll person.

## ARGUMENT

### I.    No Overtime Records Exist Responsive to Request No. 4

As Defendants' counsel clearly and unambiguously explained to Plaintiffs' counsel in Defendants' Responses to Plaintiffs' Requests for Production of Documents served on Plaintiffs on January 29, 2018, during a telephone conversation with Plaintiffs' counsel on February 9, 2018, and in an email dated February 21, 2018, Defendants are not in possession of any responsive documents/records relating to Request No. 4. (Pls' Ex. G; **Exhibit 1** hereto, February 21, 2018 email). Indeed, because the security guards at issue are not employees, but rather independent contractors, Defendants are not subject to the FLSA's *employer* recordkeeping

regulations under 29 CFR §516.6(2), which requires only employers to maintain information regarding overtime pay calculation. (*Id.*); 29 CFR §516.6(2).

Separately, and even if 29 CFR §516.6(2) and/or Defendants were the security guards' employer, 56 Ill. Admin. Code §300.630 does not require employers to maintain documents that record and/or delineate the total *overtime* earnings for employees, which Plaintiffs seek in Request No. 4; only the total amount paid to the employee each pay period. 56 Ill. Admin. Code §300.630. Accordingly, because Defendants do not have documents in their possession responsive to Request No. 4, nor are they required to create such documents, Defendants should not be ordered to comply with Request No. 4. *See Merritt v. Miner*, No. 3:16-cv-536, 2017 WL 6325771, at *2 (S.D. Ill. Dec. 11, 2017)(denying the plaintiff's motion to compel where the plaintiff sought documents from the defendant that did not exist, stating, "Defendants are not required to produce material that does not exist and are not required to create evidence").

## II. All Possible and Potential Class Members Seeking to Recover Unpaid Overtime Have Already Opted-In to the Lawsuit

Notwithstanding the above, Defendants should not be compelled to produce the requested information in Request Nos. 1-4 because it is evident that Plaintiffs only seek to circumvent 29 U.S.C. §216(b)'s opt-in requirement vis-à-vis these Requests and Rule 23's opt-out procedure. *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, n.3 (N.D. Ill. 2004) ("Because Rule 23 class members must take affirmative action to remove themselves from the class ranks, under most circumstances, Rule 23 classes will be greater in number than a collective action under the FLSA"). Indeed, Request Nos. 1-3 seek documents relating to all hours worked by **all** independent contractor security guards who are paid by the hour (Request No. 1); the recorded clock in and clock out times for **all** independent contractor security guards who are paid by the hour (Request No. 2); documents recording the total amounts paid to **all** independent contract

security guard who are paid by the hour (Request No. 3); documents recording the total **overtime earnings** of **all** independent security guards who are paid by the hour (Request No. 4). (Pl's Ex. G).

As Plaintiffs state, on January 23, 2018, after mailing notice of the lawsuit to fifty-three individuals following Judge Coleman's conditional certification of Gunn's FLSA unpaid overtime claim, only **one** individual returned the opt-in form (Pl's Brief, p. 3). Thus, presently, the class of present and former independent contractor security guards who will be seeking to recover for alleged unpaid overtime is **two people**: Gunn and the sole individual who returned the opt-in form.

Courts in this judicial district routinely refuse to certify a plaintiff's state law unpaid wage claims under Rule 23 and its opt-out procedure, if the plaintiff is simultaneously seeking identical relief under the FLSA and its opt-in procedure, which Gunn is doing here. *See e.g. McClain*, 222 F.R.D. at 577-78 ("We find that allowing McClain to use supplemental state-law claims to certify an opt-out class in federal court would undermine Congress' intent to limit these types of claims to collective actions"); *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.*, No 01 C 2361, 2002 WL 1359411, at \*2, n.1 (N.D. Ill. June 21, 2002")("Because all of the companies' present and former employees will have the chance to decide whether to join the case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will *automatically* include all of the employees unless they opt out"); *Rodriguez v. The Texan, Inc.*, No. 01 C 1478, 2001 WL 1829490, at \*2 (N.D. Ill. March 7, 2001)("[U]nderlying congressional intent would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement").

4

Applying the rationale from the cases above to Plaintiffs' Motion to Compel demands that Plaintiffs not be permitted to achieve through Rule 23's opt-out procedure what they could not through 29 U.S.C. § 216(b)'s opt-in procedure, namely, a larger class seeking unpaid overtime. This is precisely why Plaintiffs seek the information in Request Nos. 1-4 (particularly Request No. 4). However, as the Court in *Muecke* noted, "[O]nce employees who receive notice have decided whether to opt into the FLSA class, we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages." *Id.* at *2. Here, Plaintiffs sent the opt-in notice to fifty-three independent contractor security guards; only one person consented to join this lawsuit by timely returning the opt-in form. Gunn and that one outlier, therefore, are the only two current and/or former independent contractor security guards who have taken affirmative action to pursue a claim for alleged unpaid overtime and solely are the "class" moving forward regarding unpaid overtime. Accordingly, Plaintiffs should not be permitted to a take a second bite at the proverbial apple in order to create a larger class by obtaining the payroll information (some of which does not exist) of independent contractor security guards who have **affirmatively chosen not to join this lawsuit**, only because Plaintiffs' first attempt to create a large class failed miserably. *McClain*, 222 F.R.D. 574 at n.3 ("Because Rule 23 class members must take affirmative action to remove themselves from the class ranks, under most circumstances, Rule 23 classes will be greater in number than a collective action under the FLSA").

Finally, the cases Plaintiffs rely on to support their arguments are inapplicable because in none has the 29 U.S.C. § 216(b) opt-in class already been set; rather, each (FLSA case) involves pre-29 U.S.C. § 216(b) certification.

### III.     Defendants Are Exempt from the Chicago Minimum Wage Ordinance (Count III)

Count III seeks to recover for Defendants' alleged failure to pay the independent contractor security guards the proper minimum wage under the CMWO, Chapter 1-24 of the Municipal Code of Chicago ("MCC").  Request Nos. 1-3 directly relate to this claim, as the Requests seek information regarding all hours worked (Request No. 1); all recorded clock in and clock out times (Request No. 2); and total amounts paid out (Request No. 3) (Pls' Ex. G).

As a matter of law, Defendants should not be compelled to produce the requested information in Request Nos. 1-3. The reason is that it is the official position of the Chicago Department of Business Affairs and Consumer Protection ("BAPC"), the sole Department in the City of Chicago that the City Council tasked with enforcing the CMOW, that because private security firms located in Chicago (as Defendants are), as well as other professions, are regulated by the State of Illinois, they are exempt from the City of Chicago's Home Rule regulation.[2] *See* §1-24-090 of the MCC; **Exhibit 2** attached hereto, Declaration of Barbara Gressel, ¶5-6; Nereida Moreno and Greg Trotter, *Chicago's minimum wage not for all*, Chicago Tribune, December 3, 2017, §2, at 1; 3, attached hereto as **Exhibit 3**).  As a result, since the City Council's enactment of the CMWO in 2015, the BACP has not enforced the CMWO against private security firms located in the City of Chicago, (as Defendants are), who are alleged to have engaged in minimum wage violations.  (Ex. 2, Gressel Dec., ¶7; Ex. 3, Chicago Tribune Article).  Thus, to compel Defendants to provide Plaintiffs with the information they seek in Request Nos. 1-3 in order to assist Plaintiffs establish Rule 23 class certification elements for Count III serves no lawful, meaningful and/or relevant purpose to this lawsuit because Defendants are exempt from compliance with the CMWO. (*Id.; Id.*). *See In re Bayer Healthcare and Merial Limited Flea*

---

[2] Defendants intend on filing a motion for summary judgment on this issue relating to Count III of Plaintiffs' Second Amended Complaint (CMWO), which Plaintiffs recently sought leave to file on March 20, 2018.

*Control Products*, 752 F.3d 1065, 1074 (6th Cir. 2014)(denying the plaintiff's request for extended discovery in a class action lawsuit and stating, "A district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided").

To the extent Plaintiffs' intend to argue that the information sought in Request Nos. 1-3 is necessary and/or reasonably calculated to the lead to the discovery of admissible evidence regarding Plaintiffs' state overtime claim in Count II, Defendants once again argue that that class is already set in stone with all of the present and former independent contractor security guards who wish to pursue a claim for alleged unpaid overtime wages, namely Gunn and one other individual. Defendants already have provided Plaintiffs with the information sought in Request Nos. 1-3 for Gunn and Haymer, and will do so for the one opt-in individual.

Alternatively, because within two weeks of the filing of this pleading Defendants will be moving for summary judgment on the issue that Defendants are exempt from the CMWO, should this Court be inclined to compel Defendants to produce the information sought in Request Nos. 1-3, Defendants request that the Court hold that ruling in abeyance until Judge Coleman rules on Defendants' motion for summary judgment on Count III.

## IV.     Producing the Requested Information is Unduly Burdensome

Before class-wide discovery is permitted, Plaintiffs must demonstrate that "there is some factual basis for plaintiffs' claims of class-wide discrimination." *Tracey v. Dean Witter Reynolds*, 185 F.R.D. 303, 305 (D. Colo. 1998). The plaintiff "bears the burden of advancing a prima facie showing . . . that discovery is likely to produce substantiation of the class allegations." *Id.* Plaintiffs must present evidence from which a jury could find, if it wished, that they (and the class which they seek to certify under Rule 23) all were misclassified as independent contractors and not paid for overtime hours they worked. Even if Plaintiffs can

establish that they (individually) were misclassified as independent contractors and failed to receive appropriate compensation for overtime hours, that fact alone is not dispositive as to all potential class members. *Id.* Despite extensive written discovery, Plaintiffs thus far have presented no evidence of a Company-wide policy in which Defendants intentionally misclassified security guards as independent contractors in order to avoid paying them overtime and/or the proper minimum wage under the CMWO, and have presented no evidence that their alleged failure to receive overtime and/or be paid the proper minimum wage under the CMWO was prompted or caused, even in part, by a Company-wide policy.

Thus, in the absence of evidence which eliminates such variables, Plaintiffs' recitation of their own experiences fails to demonstrate that the alleged failures were due to a Company-wide policy. This is particularly true here, where Plaintiffs have presented no affidavit from anyone who has **actual first-hand knowledge of the Company's payroll practices**, or evidence that a Company-wide policy exists in which Defendants intentionally misclassify security guards as independent contractors to avoid paying them overtime and/or the proper minimum wage under the CMWO. Without any evidence of an unlawful Company-wide policy, there can be no basis from which this Court can conclude that the discovery by Plaintiffs will ever yield a pattern or practice among Defendants which is pursuant to a Company-wide policy.

The "recognized need for pre-certification discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sounds discretion of the court." *Id.* at 305. Thus, even if as Plaintiffs posture the information sought may be relevant, district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." Fed.R.Civ.P. 26(b)(2)(c). Further, a

party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. *Id*. at 26(b)(2)(B).

Plaintiffs would have this Court believe that the information sought regarding all hours worked of each independent contractor security guard paid by the hour (Request No. 1); all recorded clock in and clock out times of each independent contractor security guard paid by the hour (Request No. 2); and all amounts paid to each independent contractor security guard paid by the hour (Request No. 3) is information readily available, accessible, and can easily be reproduced onto a Microsoft Excel or Microsoft Access format – it is not and cannot be.

As the security guards are not employees, but rather, independent contractors, Defendants do not – nor are required to – maintain separate and individual "personnel files" containing the various payroll records mandated by the FLSA and/or §300.630 of the Code for each independent contractor security guard. Thus, the information Plaintiffs seek is not stored in a central file cabinet and/or a central electronic database in which a search can readily and easily be performed. Rather, to gather and collect the data Plaintiffs seek in Request Nos. 1-3, the **one person** who processes Defendants' payroll will have to conduct an extensive, exhaustive and burdensome week-by-week-by-week search via text messages and/or email for each individual independent contractor security guard to locate the information Plaintiffs seek, then (and to the extent such information even exists going back to August 31, 2014) subsequently and manually enter the requested information for each and every day and week in which that independent contractor security guard performed independent contractor services into individual Microsoft Excel spreadsheets. This is so because each week security guards, as independent contractors, submit the equivalent of an invoice to Defendants, with the dates and approximate hours he/she worked that week. Thus, to require Defendants' sole payroll person to perform the arduous tasks

219445725.2 67946/321365

above, then subsequently and manually insert the data into an individual Excel spreadsheet for, at a minimum sixty-one individuals (the number of security guards whose names and contact information Defendants provided pursuant to the conditional certification notice), is a monstrous task even for a sophisticated and/or multi-staffed payroll department (of which Defendants are not), let alone for one person to complete. Such a task epitomizes what Rule 26(b)(2)(c) characterizes as "unduly burdensome." Accordingly, Defendants should not be compelled to produce the information Plaintiffs seek in Request Nos. 1-3.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel the Production of Documents.

Dated: April 10, 2018

Respectfully submitted,

STEVENS SECURITY & TRAINING
SERVICES, INC. and AL STEVENS

By:   s/ Scott Cruz
_____
      One of Their Attorneys

Scott Cruz (#6277314)
CLARK HILL PLC
130 East Randolph Street– Suite 3900
Chicago, IL 60601
Tel. (312) 985-5910 / Fax (312) 985-5588
scruz@clarkhill.com

219445725.2 67946/321365

## Exhibits to Defendants' Response In Opposition To Plaintiffs' Motion To Compel The Production Of Documents

Exhibit 1:     Defendants' counsel's email to Plaintiffs' counsel, February 21, 2018

Exhibit 2:     Declaration of Barbara Gressel

Exhibit 3:     *Chicago's Minimum Wage Not For All*, Chicago Tribune, December 3, 2017, by Nereida Moreno and Greg Trotter

# EXHIBIT 1

## Cruz, Scott

| | |
|---|---|
| **From:** | Cruz, Scott |
| **Sent:** | Wednesday, February 21, 2018 10:33 AM |
| **To:** | 'Christopher Wilmes' |
| **Cc:** | Woyan, Jennifer A. |
| **Subject:** | RE: Confirming |

Chris:  See below for Defendants' supplemental responses.

**Scott Cruz**

CLARK HILL PLC
312.985.5910 (Direct) | 312.985.5588 (Fax) |

**From:** Christopher Wilmes [mailto:cwilmes@HSPLEGAL.COM]
**Sent:** Friday, February 9, 2018 4:29 PM
**To:** Cruz, Scott
**Subject:** Confirming

Hi Scott:

This confirms our phone call. Please let me know if I got anything wrong:

    1. You will provide amended Rule 34 responses stating affirmatively whether you are withholding documents based on objections.

        **The only documents being withheld based on the objections raised are those documents covered under the attorney-client privilege and/or the work product doctrine.**

    2. You will provide an amended response to Interrogatory No. 5 providing the requested information (to the extent it exists) for the two named plaintiffs.

        **As I stated during our telephone conversation, Defendants do not possess the requested information with respect to any of the independent contractor security guards, including Ms. Gunn and Mr. Haymer, as they are not required to do so under the FLSA and/or IMWL because the guards are not employees.**

    3. You will provide an amended response for Interrogatory No. 11 providing the model of cell phone for Kim and Rashid.

        **Rashid has an IPhone 6; Kim Coleman has a Samsung 7.**

    4. You will investigate whether Mr. Deals and Mr. Stevens ever used a computer in the course of their work for Stevens Security, and if so, will provide the make and model.

        **Mr. Deals does not use a computer; Mr. Stevens uses an IPad to receive and send emails from his W-2 employees, such as Kim Coleman and/or Jennifer Morris**

    5. You stand on your objection re: payroll records of putative class members.

1

Yes.

6. You will speak with your client and advise me whose e-mail accounts were searched, whose phones were searched, who performed the searches, and how the searches were performed.

**I never agreed to provide this requested information. I responded that these questions were better suited for a deposition, but, in the spirit of cooperation, that I would speak to my client and gather additional information.**

**Rashid, Kim Coleman, Jennifer Morris and Al Stevens searched for the words/phrases you identified. Available text messages to guards and among the aforementioned individuals, as well as emails were reviewed, and none of those words/phrases were found.**

I would ask that you provide the amended discovery responses by the end of the next week. If that doesn't work, please let me know what time frame does work. Also, did you get a chance to look at the stipulation I sent you regarding the phones and computers being moved in interstate commerce?

Thanks.

**Christopher Wilmes**, *Attorney*
HUGHES SOCOL PIERS RESNICK DYM, LTD.
70 W. Madison St., Suite 4000
Chicago, IL 60602
Dir **312.604.2636** Fax **312.604.2637**

cwilmes@hsplegal.com 🔳 🗗 🔽

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MICHELLE GUNN, MARTINEZ HAYMER, and CARL THOMAS, individually and on behalf of others similarly situated, | Case No. 17-cv-6314 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| | Magistrate Judge Jeffrey Cole |
| STEVENS SECURITY & TRAINING SERVICES, INC. and AL STEVENS, | |
| Defendants. | |

## DECLARATION OF BARBARA GRESSEL

1. I am the Deputy Commissioner for the Prosecution & Adjudication division of the City of Chicago's Department of Business Affairs and Consumer Protection ("BACP").

2. I have held this position since October, 2013. Prior to serving as the Deputy Commissioner, I served as the Assistant Commissioner and as an attorney for the department.

3. In my role as Deputy Commissioner, my job duties and responsibilities include: supervise attorneys and law clerks responsible for prosecuting ordinance violations at the Department of Administrative Hearings; supervise license discipline cases filed with the Mayor's License Discipline Commission; supervise enforcement of city ordinances including the Protecting Tenants in Foreclosed Rental Properties Ordinance, the Shared Housing Ordinance, and the Minimum Wage and Paid Sick Leave Ordinance.

4. Among its various powers, the BACP issues licenses to Chicago businesses and Chicago public vehicles, provides business education and access to resources, enforces the City of Chicago's Municipal Code, and protects consumers from fraud.

5. The Chicago Minimum Wage and Paid Sick Leave Ordinance is Chapter 1-24 of the Municipal Code of Chicago ("MCC").

6. Section 1-24-090 of the MCC provides as follows, "The department of business affairs and consumer protection shall enforce this chapter, and the commissioner is authorized to adopt regulations for the proper administration and enforcement of its provisions.

7. BACP does not enforce the Chicago Minimum Wage and Paid Sick Leave Ordinance against private security firms located in the City of Chicago who are alleged to have engaged in minimum wage violations.

Dated: *March 27, 2018*

*Barbara Gressel*
Barbara Gressel

# EXHIBIT 3

🖨 A⁺ A⁻

# Chicago's minimum wage not for all

## City says state-regulated jobs exempt; labor experts urge more enforcement



John Bouman, president of the Sargent Shriver National Center on Poverty, says how few minimum wage complaints are investigated is "troubling but not surprising." (Phil Velasquez/Chicago Tribune )

By Nereida Moreno    and Greg Trotter    Chicago Tribune

Maria Leon, a single mother of three and longtime Gage Park resident, says she worked for years in two Chicago restaurants for less than the city's minimum wage.

Last year, she sued the restaurants, which have the same owner, alleging they were violating city, state and federal wage laws. The two sides reached a settlement, but Leon believes it's important to speak up on the matter.

"You can't be silent. There are a lot of businesses who are doing this and we just sit there and take it because we need to work. But there are laws in place to protect workers," said Leon, 42.

Enforcement of Chicago's minimum wage ordinance — which passed exactly three years ago on Dec. 2, 2014, and gradually raises the wage to $13 an hour by 2019 — remains a work in progress. Some legal rights activists and labor experts say the city needs to dedicate more staff and resources to recovering wages for underpaid workers and holding businesses accountable. City officials say they've shifted to a more aggressive approach this year and results will prove out over time.

But there's also this massive loophole: The city considers nearly 100 professions, including private security firms, to be exempt from the city wage ordinance because they're regulated by the state. That means those businesses only have to pay workers the state's minimum wage, $8.25 an hour, instead of the city's, which is currently $11 an hour. This came as news to the state.

"(The Illinois Department of Labor) is just learning of the city's new interpretation of its own local minimum wage ordinance. Should the city decide to exclude certain workers, the state minimum wage still applies," Ben Noble, spokesman for the state Department of Labor, said in an emailed statement Thursday.

City officials, meanwhile, say they've been interpreting the ordinance this way all along. As a result, dozens of wage complaints filed with the city against state-regulated businesses haven't led to investigations.

In total, almost 550 complaints about minimum wage violations have been filed with Chicago's Department of Business Affairs and Consumer Protection since the law went into effect in July 2015. Only about 140 — or roughly one-quarter of the complaints — have led to investigations.

People who make initial complaints with the city often don't follow up with the necessary paperwork to trigger an investigation, according to data provided by the city.

The fact that only 1 in 4 complaints are investigated is "troubling but not surprising given the squeeze down on public resources and budget problems," said John Bouman, president of the Chicago-based Sargent Shriver National Center on Poverty Law, who co-chaired the task force appointed by Mayor Rahm Emanuel to look at raising the city's minimum wage in 2014.

"It's not magic," Bouman said. "You gotta pay for this stuff."

He said the business affairs department could be more "aggressive" about investigating possible violations.

"The employers know that they have a workforce that is intimidated for one reason or another — they need to work, so they're unlikely to make waves," Bouman said. "So they cheat them."

As the head of her household, Leon said she knew she was being paid less than minimum wage at Jam 'n Honey on the city's North Side and Franconello in West Beverly on the Far South Side, but she didn't want to stir up any trouble. After she confronted her boss about tips she was owed, Leon said, she was fired.

Thomas Carroll, attorney for the restaurants' owner, Frank Ruffalo Sr., said his client denied the allegations and that the two sides had reached an amicable settlement with no admission of liability.

'Time for the gloves to come off'

Every year, Chicago's Department of Business Affairs and Consumer Protection receives thousands of complaints on matters ranging from rogue taxi drivers to home repair scams. But staffing levels have remained basically the same since the minimum wage ordinance went into effect in July 2015.

In 2015, the department had 191 full-time employees and a $19.3 million budget. The budget approved for 2018 allows for 193 full-time employees and about $20.3 million in total funding.

Only a sliver of that workforce is looking into minimum wage complaints. Within the department, there are four investigators assigned to investigate minimum wage complaints, up from two last year, out of 42 total investigators, said Commissioner Rosa Escareno, who took over the post in July.

Does the department need more money and staff to properly enforce the ordinance?

"Certainly, more investigators would help, but what's most important is strategy. … If the complaints continue to grow, I'll be the first to allocate more resources where needed and I won't be shy about asking for more," Escareno said.

For the first two years, the city was more focused on educating businesses; beginning this year, that approach has shifted to more aggressive enforcement, said Deputy Commissioner Barbara Gressel. To date, the city's recovered more than $213,000 in lost wages for underpaid workers but has issued no fines for companies. That too could change going forward, she said.

"It's time for the gloves to come off," Gressel said.

Earlier this year, the department changed its process to allow investigators to issue subpoenas for business records for all employees — not just the person filing the complaint, Escareno said. That's sped up the process of investigating the complaints, she said.

To encourage more people to follow through with the paperwork needed to start an investigation, the department also simplified the complaint form earlier this year. It's available in English and Korean as of now, but not Spanish. The city's in the process of making the form available in other languages.

Bob Bruno, a professor of labor and employment relations at the University of Illinois at Chicago, said more improvements to the city's enforcement strategy are needed, such as a unit solely focused on minimum wage enforcement, with staffers that are less dependent on complaints coming to them and more proactive in seeking out noncompliant businesses.

Random sample audits of businesses and independent study of the city's enforcement could also help, Bruno said.

Arise Chicago, a nonprofit workers' rights organization, is drafting an ordinance to establish an office of labor standards that would be housed within the business affairs department to enforce all of the city's employment laws, including minimum wage and paid sick leave. The nonprofit hopes to work with aldermen and propose the ordinance to the City Council early next year, said Adam Kader, worker center director for Arise Chicago.

"The problem is that City Council passed these laws and decided they should be handled by the BACP but did not then resource the BACP accordingly," Kader said. "You can't expect to task an agency to do more work without resourcing them."

The exemption loophole

Michelle Gunn, a South Shore resident, was drawn to the glitz and glamour of working as a security guard on the set of "Empire," a popular TV series filmed in Chicago.

But at $9 an hour, Gunn was earning less from Stevens Security — the firm contracted to secure the "Empire" set — than Chicago's minimum wage.

Gunn, 51, said she was outspoken about not being paid minimum wage, despite working more than 40 hours a week within city limits, and eventually sued the security firm.

Scott Cruz, an attorney with the Clark Hill law firm who represents Stevens Security, disputed allegations that the company violated minimum wage laws, saying Gunn was an independent contractor, not an employee.

But according to the city, private security firms like Stevens are in one of almost 100 professions — including barbers, locksmiths and nail technicians — regulated by the state and therefore considered by the city to be exempt from Chicago's home rule regulation.

Christopher Wilmes, Gunn's attorney, called the city's interpretation of its ordinance "incredibly narrow" and said that would also mean the city's couldn't require such professions to follow other city ordinances like building and zoning codes.

That argument ignores a long history of the state having considerable authority over labor law, Escareno said. Since Chicago's minimum wage law was implemented, the city has interpreted state law to mean that for certain occupations the conditions of employment are regulated solely by the state, she said, whereas other local laws, such as building and zoning codes, aren't relevant to employment and are enforceable by the city.

Every day, Wilmes' office — the law firm of Hughes Socol Piers Resnick & Dym — receives calls from workers who say they aren't being paid minimum wage or overtime pay, he said. They turn most away, often because the employers are too small or can't pay, effectively making it pointless for a private attorney to sue them, Wilmes said. Other times, employees have signed arbitration agreements that make it hard to challenge the employers in court, he said.

These limitations of private law practice are why the city needs to step up and better protect workers, Wilmes said.

The city's working on it, Escareno said, and willing to listen to ideas on how to improve.

"My own personal opinion is workers who are paid the least amount are our most vulnerable residents, most fearful and possibly the least educated," Escareno said. "The more people we can help, the happier we are."

nmoreno@chicagotribune.com

gtrotter@chicagotribune.com

Twitter @nereidamorenos

Twitter @GregTrotterTrib

‹ PREVIOUS ARTICLE        Article 62 of 207        NEXT ARTICLE ›

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a copy of the foregoing

**Defendants' Response In Opposition To Plaintiffs' Motion To Compel The Production Of**

**Documents** to be served upon the entities listed below via CM/ECF e-service and/or U.S. Mail

delivery on April 10, 2018.

Matthew J. Piers (ARDC 2206161)      Carl Thomas
Christopher J. Wilmes (ARDC 6287688)  10619 S. Major Ave.
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.  Chicago Ridge IL 60415
70 West Madison Street, Suite 4000    773-886-6837
Chicago, Illinois 60602
312-580-0100              *Pro se*
mpiers@hsplegal.com
cwilmes@hsplegal.com


/s/ Scott Cruz
                  Scott Cruz

11