# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE GUNN, MICHAEL WATSON, and JACOB SAUNDERS, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 17-cv-06314 ) |
| v. | ) Judge Sharon Johnson Coleman ) ) |
| STEVENS SECURITY & TRAINING SERVICES, INC., and AL STEVENS, | ) ) ) |
| Defendants, | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michelle Gunn, Michael Watson, and Jacob Saunders filed this suit against Defendants Stevens Security & Training Services, Inc., and Al Stevens (collectively "Stevens Security"), asserting that Stevens Security violated the Fair Labor Standards Act, the Illinois Minimum Wage Law (the "IMWL"), the Chicago Minimum Wage Ordinance, and the Illinois Wage Payment and Collection Act (the "IWPCA"). The Court granted summary judgment to Stevens Security on the Wage Ordinance claim on January 22, 2019. Plaintiffs move to certify the remaining claims as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). For the reasons stated herein, the Court grants Plaintiffs' motion [131].

**Background**

Stevens Security is a security guard company that provides a range of security guard services. The company maintains one office in the South Shore neighborhood of Chicago, and the guards work at various locations depending on the needs of Stevens Security's clients. Approximately 85 percent of the guards perform services for Twentieth Century Fox film and television crews working in Chicago. Each of those guards have the same job duty, watching equipment. Stevens Security

1

classifies all of its security guards as independent contractors and pays all of its guards the same rate for all hours worked during a workweek. Stevens Security provides its guards with uniforms that include a Stevens Security branded shirt and hat that the guards wear for servicing most clients. The guards rent the uniforms from the company, paying $240 for the uniform through payroll deductions during their first three payroll periods.

When Stevens Security hires new security guards, the guards attend a "meet and greet" session. Prior to this litigation, Stevens Security typically required the guards to sign several forms, including documents titled Employment & Wage Agreement, Employee Agreement, Employment Application, and Uniform Rental Agreement. The Employment & Wage Agreement lists Stevens Security as the employer and informs guards that they "shall comply with all Employer policies, procedures, rules and regulations, both written and oral, as are announced by the Employer from time to time." (Dkt. 132-1 at 53.) Likewise, the Employee Agreement lists Stevens Security as the employer and includes a clause restricting guards' use of confidential information learned during their employment with Stevens Security. (Dkt. 132-1 at 65.) Stevens Security also maintained an Employee Handbook that was often distributed to new security guards. (Dkt. 132-1 at 55–64.) The handbook lists numerous rules, including deductions from pay for infractions; company president Al Stevens testified that the handbook intended to prevent certain behavior, but was not enforced as stated. A payroll deductions spreadsheet, however, shows that Stevens Security made deductions from various guards' paychecks for uniform items, for a specific number of hours of pay, and for unidentified reasons. (Dkt. 134.)

Stevens Security employee Kimberly Coleman schedules the security guards, including sending text messages to the guards regarding mandatory meetings for which the guards were required to come to the Stevens Security office. In a series of six text messages, Coleman referred to

the meeting or other requirement described in the message as mandatory, and one message referred to the "Stevens Security employees." (Dkt. 132-2 at 17–21; Dkt. 171-2.)

Plaintiffs are all former security guards who provided security services for Stevens Security's clients in and around Chicago. They worked as guards for various lengths of time: Michelle Gunn from March 2016 until August 2017; Michael Watson from November 2016 until August 2017; and Jacob Saunders from November 2014 until November 2017. Saunders had deductions made from his pay for breaking rules, including $72 for using social media on the job in March 2016 and $36 for sleeping on the job in September 2017. (Dkt. 132-10 at 4, 7.) Stevens Security deducted $60 from Watson's pay to cover money that Al Stevens personally paid him, which Watson testified had been given to him to cover gas for transporting other employees to a work site. (Dkt. 132-14 at 3.) Each Plaintiffs' pay was reduced to cover uniform deductions. (Dkt. 132-9, 132-10, 132-14.) Plaintiffs signed a blank piece of paper when they received their pay minus any deductions, functioning as a "check log" sheet. Gunn, Watson, and Saunders also signed a Confidentiality Agreement.

Some Stevens Security guards signed declarations indicating that they were required to follow certain rules set by Stevens Security while other guards signed declarations stating that they were not punished when they did not follow rules set by the company, such as failing to attend a mandatory meeting. Further, there is conflicting testimony regarding additional rules, especially regarding confidentiality, and whether Stevens Security or their client Twentieth Century Fox set those rules. The parties, however, do not dispute that rules prohibiting certain conduct existed for all guards working on Twentieth Century Fox jobs. Stevens Security provided a "cheat sheet" of these rules to all security guards at the initial "meet and greet" event. (Dkt. 132-4, Ex. 5 at 44.)

On September 30, 2017, approximately sixty security guards who were performing security services on behalf of Stevens Security clients executed an Independent Contractor Agreement, including Plaintiff Saunders. (Dkt. 168, Ex. B at 82.) The guards' duties did not change as a result of signing the agreement.

Plaintiffs seek to certify two classes under Rule 23(b)(3):

(1) All individuals who worked as security guards for Stevens Security between August 31, 2014 and the present, who were paid by the hour, and who worked for Stevens Security in excess of forty hours in any workweek or who earned less than $8.25 per hour during any of their first six weeks of work due to uniform deductions (the "IMWL Class").

(2) All individuals who worked as security guards for Stevens Security between August 31, 2014 and the present, who were paid by the hour, and whose pay records show that Stevens Security made deductions from their hourly wages (other than for child support payments mandated by law and other than for three $80 deductions for uniforms) (the "IWPCA Class").

**Legal Standard**

To be certified, Plaintiffs must demonstrate that they satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the three alternatives set forth in Rule 23(b). *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires that a proposed class meet requirements of numerosity, typicality, commonality, and adequacy of representation. *Id.* When certification is sought under Rule 23(b)(3), the proponents of the class must also show that questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members and, relatedly, that a class action is superior to other available methods of resolving the controversy. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citing Fed. R. Civ. P. 23(b)(3)).

Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (internal quotation marks and citation omitted). When factual disputes bear on matters vital to certification, the Court must receive evidence and resolve those disputes prior to certifying the class. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

4

Certification is proper only if, "after rigorous analysis," the Court is satisfied that Rule 23's prerequisites have been met. *Comcast Corp.*, 569 U.S. at 33. The Seventh Circuit has repeatedly reiterated that the focus of class certification must be on Rule 23 and that class certification proceedings cannot be allowed to turn into a preemptive determination of the merits. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015).

**Analysis**

Stevens Security does not dispute, and the Court agrees, that Plaintiffs' proposed classes satisfy the Rule 23(a) requirements of numerosity, typicality, and adequacy. Numerosity requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Sixty and ninety individuals for the IMWL Class and the IWPCA Class, respectively, is sufficient to satisfy numerosity. *See Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011) (Kennelly, J.); *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) (Darrah, J.). Plaintiffs' claims are typical if they arise from the same event, practice, or course of action that gives rise to the claims of other class members; and the claims of the Plaintiffs and the class members are based on the same legal theory. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Typicality here is met where, Plaintiffs' and the potential class members' claims arise from the same course of action of Stevens Security: the alleged failure to pay overtime and take improper deductions from their hourly wages. The claims of Plaintiffs and the potential class also arise from the same legal theories: the alleged violations of the IMWL and the IWPCA. Regarding adequacy, Plaintiffs' attorneys appear qualified, and no apparent conflicts exist between the named Plaintiffs and the class. *See Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013). Thus, Plaintiffs claims satisfy numerosity, typicality, and adequacy.

Next, Plaintiffs must demonstrate commonality, which means the existence of "'questions of law or fact common to the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346, 131 S.Ct. 2541,

5

180 L.Ed.2d 374 (2011) (quoting Fed. R. Civ. P. 23(a)(2)). "What matters to class certification … [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Keele*, 149 F.3d at 594 (7th Cir. 1998).

Plaintiffs contend that the primary common question is whether the security guards were employees under the *Lauritzen* six-factor test. *See Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987). Plaintiffs also identify whether class members worked in excess of forty hours in a workweek and whether Stevens Security paid the security guards less than state minimum wage during certain workweeks due to deductions as common questions. Stevens Security responds that the security guards' status as employees or independent contractors cannot be evaluated using common evidence and that there is divergent testimony regarding the amount of control exerted over the guards. Further, Stevens Security asserts that the Independent Contractor Agreement signed by the security guards governed the terms and conditions of the guards' relationship with Stevens Security starting on September 30, 2017, preventing a resolution of all class members' claims in one stroke.

Plaintiffs have satisfied the commonality requirement for both claims. The IMWL Class claim arises from the same course of conduct that gives rise to the claims of the other class members and their claims are based on the same legal theory. Specifically, Stevens Security classified the Plaintiffs and all other putative class members as independent contractors instead of employees in alleged violation of the IMWL. *See Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 183 (N.D. Ill. 2015), on reconsideration in part, 171 F. Supp. 3d 798 (N.D. Ill. 2016) (Gottschall, J.) (finding common questions where all workers were classified as independent contractors). Evaluating the guard's status will consider the same common nucleus of operative facts, including the employment

documents Stevens Security provided to new guards, the rules the guards were expected to follow, and the mandatory meetings for guards. Stevens Security did not begin having security guards sign the agreements until one month after Plaintiffs filed this case. Moreover, the independent contractor agreements themselves are of minimal relevance to the Court's determination whether the security guards were employees. *See, e.g., Lauritzen*, 835 F.2d at 1544–45 ("The FLSA is designed to defeat rather than implement contractual arrangements."); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) ("[P]utting on an 'independent contractor' label does not take the worker from the protection of the Act."); *Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 752 (N.D. Ill. 2011) (Kendall, J.) (same).

Further, whether class members worked more than forty hours in a workweek and whether Stevens Security paid class members less than state minimum wage during certain workweeks can be determined by reviewing payroll records. Plaintiffs have presented evidence that Stevens Security does not pay the security guards an overtime premium when the guards work more than forty hours in a workweek and that Stevens Security makes uniform deductions from the guards' wages during each of their first six weeks of work. Likewise, whether Plaintiffs provided express written consent at the time of other pay deductions can be determined by reviewing the papers signed by class members when they received their pay. These questions related to overtime and payroll deductions are amenable to resolution across the class. *See, e.g., Torres v. Nation One Landscaping, Inc.*, No. 12 CV 9723, 2014 WL 5350440, at *3 (N.D. Ill. Oct. 21, 2014) (Shah, J.). Therefore, commonality also exists for the IMWL Class claim.

Having determined that Plaintiffs meet Rule 23(a)'s threshold prerequisites, the Court turns to the Rule 23(b)(3) requirements. Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the

7

controversy." Fed. R. Civ. P. 23(b)(3).  The Court uses the elements of the allegations to determine whether common issues of law and fact predominate over individualized issues.  *Messner*, 669 F.3d at 815; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011) (The predominance analysis "begins, of course, with the elements of the underlying cause of action.").

The Court first considers the proposed IMWL Class.  The IMWL's protections apply to "any individual permitted to work by an employer in an occupation."  820 ILCS 105/3(d).  The IMWL's regulations incorporate the same definition of employee as the Fair Labor Standards Act. *See* 56 Ill. Admin. Code 210.110 ("'Employee' means any individual permitted or suffered to work by an employer."); *Wilkins*, 308 F.R.D. at 185.  The test for whether a worker is an employee under the IMWL focuses on six factors to assess the employment relationship:  1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; 4) whether the service rendered requires a special skill; 5) the degree of permanency and duration of the working relationship; and 6) the extent to which the service rendered is an integral part of the alleged employer's business.  *See Lauritzen*, 835 F.2d at 1534–35.

In this preliminary predominance inquiry, the Court looks "only so far as to determine whether, given the factual setting of the case, if the [Plaintiffs'] general allegations are true, common evidence could suffice to make out a prima facie case for the class."  *Costello*, 810 F.3d at 1060 (internal quotation marks and citation omitted).  Predominance is a qualitative concept that determines whether "there are more common issues or more individual issues, regardless of relative importance."  *Parko*, 739 F.3d at 1085.  Stevens Security argues that Plaintiffs cannot meet this requirement because individualized issues predominate.  Stevens Security asserts that evaluating the

actual control over the security guards, the duration of the working relationship, and the skills required for the position requires an individualized analysis of each guard. Further, Stevens Security asserts that the Court would have to conduct an individual analysis into the hourly wage-rate of each guard to determine if putative class members were paid below the minimum wage resulting in an IMWL violation.

Here, Plaintiffs have satisfactorily shown that the common questions of whether the security guards were employees who in turn were not paid properly pursuant to the IMWL will predominate over any individual issues. *See Bell*, 800 F.3d at 376. Contrary to the authorities relied upon by Stevens Security where the court denied class certification due to individual issues, here each of the proposed class members works or worked as a security guard for Stevens Security, which operates a single office run by the same small management team that classifies all guards as independent contractors. *See, e.g., Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 399 (N.D. Ill. 2011) (Feinerman, J.) (denying class certification of pre-shift and post-shift work because individual security officers in the putative class worked in different locations under different circumstances and were managed by different personnel that prevented defendant from knowing whether the employee was performing additional work).

Plaintiffs present evidence in the way of employment documents, mandatory meetings, and rules for the guards that demonstrate that common evidence could be used by Plaintiffs to demonstrate that the guards were employees who were not paid minimum wage for certain weeks or overtime for hours worked in excess of forty in a workweek. *See Bell*, 800 F.3d at 377; *Solis*, 819 F. Supp. 2d at 749. These issues predominate over the minor factual differences between security guards, such as whether the guard watched equipment for Twentieth Century Fox or performed security services at a night club. Stevens Security has not presented evidence of any special training

9

or certification necessary to perform different services. Likewise, differences in the length of a guard's tenure with Stevens Security are not predominate.

The Court also must consider whether Plaintiffs' proposed IWPCA Class satisfies Rule 23(b)(3). Under the IWPCA, all individuals are considered to be employees of an employer, unless the employer proves all three elements of the independent contractor exemption. *Costello*, 810 F.3d at 1059. If at the merits stage Plaintiffs demonstrate that the security guards were not independent contractors, they will need to establish that Stevens Security made deductions from the guards' pay without the express written consent of the guards at the time the company made the deductions. *See* 820 ILCS 115/9.

Stevens Security asserts that there is no common evidence regarding its policy or practice of making deductions from the security guards' paychecks without their express written consent. Rather, Stevens Security contends that each guard must be asked whether she gave consent. Plaintiffs respond that the blank piece of paper that lists the guards' signatures cannot establish express written consent. The evidence related to the signature pages and practices Stevens Security allegedly used to obtain consent for the deductions can determine whether they were improper. *See Torres*, 2014 WL 5350440 at *3. Thus, the issue of whether the deductions were lawful predominates and is amenable to resolution across the security guards.

Finally, Plaintiffs must show that proceeding as a class action is superior to alternative methods of resolving the controversy. *See* Fed. R. Civ. P. 23(b)(3). This requirement is satisfied if "a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal citation and quotation marks omitted). Stevens Security argues that a

class action is not superior because the Court will have to conduct individual calculations for all of the putative class members.

      The Court, however, finds that a class action is a superior means to resolve this case. As discussed, Plaintiffs have alleged that a significant number of employees were harmed by Stevens Security's common practices of misclassifying employees that resulted in violations of the IMWL and of pay deductions that violated the IWPCA. Under these circumstances, resolution of Plaintiffs' claims on a case-by-case basis would be an inefficient use of judicial and party resources. It would also raise the possibility that many potential plaintiffs may not bring their own claims because of the generally small individual recovery. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b)(3) was designed for situations ... in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."). As such, Plaintiffs' claims are well-suited for class treatment.

      Moreover, if Plaintiffs prove that the security guards were employees under the IMWL and the IWPCA at the merits stage, the need for individualized damages determinations do not require denial of Plaintiffs' motion for class certification. *See In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014). When, as here, "there are substantial common issues that outweigh the single variable of damages," the Court "can devise solutions to address that problem." *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). Indeed, it is common in class actions to have a final phase when individualized proofs are submitted. *Suchanek*, 764 F.3d at 756. The Court finds it would be inefficient and unrealistic to adjudicate liability numerous times and that individualized damages claims do not preclude class certification. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). The proposed IMWL Class and IWPCA Class meet the superiority requirement for certification under Rule 23(b)(3).

**Conclusion**

For these reasons, this Court grants Plaintiffs' motion for class certification [131].

IT IS SO ORDERED.

Date: 6/17/2019

> Entered: /s/ Sharon Johnson Coleman
> SHARON JOHNSON COLEMAN
> United States District Judge